Booker T. McDONALD, Petitioner,

v.

Terrell Don HUTTO, Comm. Arkansas Department of Corrections, Respondent.

No. PB–75–C–140.

United States District Court,
E. D. Arkansas,
Pine Bluff Division.

June 9, 1976.

John R. Tisdale, Little Rock, Ark., for petitioner.

Jack T. Lassiter, Asst. Atty. Gen., Little Rock, Ark., for respondent.

## MEMORANDUM DECISION

NICHOL, Chief Judge, Sitting by Designation.

Booker T. McDonald has petitioned for a writ of habeas corpus pursuant to 28 U.S.C. Section 2254. Petitioner is presently confined at the Cummins Unit of the Arkansas Department of Corrections under sentence of life imprisonment for the murder of Officer Lloyd Worthy. Officer Worthy was shot to death on September 2, 1967. Petitioner was taken into custody on September 22, 1967. On October 2, 1967, John Walker and Gene Worsham were appointed to represent the Petitioner. A plea of not guilty to the charge of murder in the first degree was entered on November 6, 1967. The appointed attorneys were permitted to withdraw by order of the Circuit Court of Pulaski County on December 18, 1967. The order as entered showed that the attorneys had effectively withdrawn on December 5, 1967. Three attorneys were subsequently shown as counsel of record on December 18, 1967. They were William Carter and Paul Henson of Little Rock, Arkansas, and Lindsey Fairley of West Memphis, Arkansas. The record discloses that Mr. Walker had been retained by an unidentified relative of the Petitioner and Walker had requested the assistance of Henson and Fairley. Petitioner entered a plea of guilty to the charge on December 18, 1967. A duly impaneled jury assessed the punishment at life imprisonment and an order for judgment and committal was entered on the same day.

Petitioner filed a petition for post-conviction relief in the Circuit Court of Pulaski County on February 15, 1974. A hearing was held on April 9, 1974. The court denied relief at the conclusion of the hearing and the denial was affirmed on appeal to the Supreme Court of Arkansas. *McDonald v. State,* Ark., 520 S.W.2d 292 (1975). This action was then commenced requesting habeas corpus relief. An evidentiary hearing was held on April 22, 1976. For the reasons below the petition for writ of habeas corpus is denied.

The petition contained many allegations not supported by the record and clearly

contradicted by the testimony of the Petitioner himself. Distilled to relevant dimensions, Petitioner challenges his confinement for the following reasons:

   (1) That he did not receive adequate representation by counsel;

   (2) That an alleged confession of the Petitioner was involuntary and was extracted from him after being denied the assistance of counsel;

   (3) That he was not apprised of the consequences of his plea of guilty to a charge of murder in the first degree;

   (4) That an inflammatory letter written by the mother of the deceased was read to the jury at the penalty stage of the proceeding.

The Court finds that Petitioner has failed to exhaust his state remedies as to the fourth allegation. Furthermore, it is difficult to comprehend how the Petitioner was prejudiced by such a letter when the only issue before the jury was the sentence to be imposed. In the letter relatives of Officer Worthy requested that the death penalty not be sought against the Petitioner. Since the only alternative to life imprisonment was the death penalty, the absence of prejudice is manifest.

## INEFFECTIVE ASSISTANCE OF COUNSEL

The Court of Appeals for the Eighth Circuit recently reviewed the standard by which a claim of ineffective assistance of counsel should be assessed. *Thomas v. Wyrick,* 535 F.2d 407 (8th Cir. 1976). While not departing from the "farce or mockery" standard expressly reaffirmed in *McQueen v. Swenson,* 498 F.2d 207 (8th Cir. 1974), the Court reiterated the explanation stated in *McQueen.*

   Stringent as the "mockery of justice" standard may seem, we have never intended it to be used as a shibboleth to avoid a searching evaluation of possible constitutional violations; nor has it been so used in this circuit. It was not intended that the "mockery of justice" standard be taken literally, but rather that it be employed as an embodiment of the principle that a petitioner must shoulder a heavy burden in proving unfairness.

*McQueen,* supra, at 214. The Court has indicated that it will continue to review such claims on a case by case basis.

   We have based our decisions concerning effectiveness of counsel upon the particulars of each case. The standard for effectiveness is not easily reduced to precise words capable of rigid application. *Garton v. Swenson,* 497 F.2d 1137, 1140 (8th Cir. 1974).

   The two-step process of evaluating a habeas corpus petition alleging ineffective assistance of counsel was set out in *McQueen v. Swenson,* 498 F.2d 207 (8th Cir. 1974).

   . . . first, determining * * * whether there has been a failure to perform some duty, as essential as the duty of investigation, owed by a defense attorney to his client; and second, determining * * * whether that failure prejudiced his defense.

498 F.2d at 218. Petitioner bears the initial burden of demonstrating that counsel failed to perform some essential duty. *Thomas,* supra, at 414. The petitioner generally bears the "additional burden of showing that the alleged error itself sufficiently undercut the reliability of the trial process to have prejudiced the petitioner's right to a fair trial." *Thomas,* supra, at 414.

The allegations of ineffective assistance of counsel may be stated with particularity as follows:

   (1) Counsel failed to investigate properly either the law or the facts of the case;

   (2) Failure to investigate deprived the Petitioner of his ability to avail himself of the defense of self defense;

   (3) Failure to investigate deprived the Petitioner of his ability to avail himself of other defenses which may have precluded a determination of first degree murder;

   (4) Counsel failed to advise Petitioner that upon trial Petitioner could have submitted to the jury instructions on manslaughter and second degree murder;

(5) Counsel failed to keep Petitioner fully advised of their actions and entered into plea negotiations without his knowledge or consent and did not inform him of their intentions to enter a plea of guilty to murder in the first degree until December 18, 1967, the same day the plea of guilty was entered;

(6) Counsel instructed him not to say anything at the sentencing hearing on December 18, 1967;

(7) Counsel failed to move for a judicial determination of the admissibility of certain in-custody statements of the Petitioner prior to the entry of a plea of guilty;

(8) Counsel failed to move for a change of venue.

The allegation of failure to investigate focuses primarily on the interval between the time Carter, Henson, and Fairley were retained and the time the bargain was struck for a plea of guilty in return for waiver of the death penalty. Carter testified in the state court proceeding that he had been retained one or two days prior to December 5, 1967. Henson testified that he began work on the case sometime in late November about one week prior to December 5. Both Carter and Henson testified that the plea bargain was not agreed to until sometime between December 5 and December 18. This testimony was contradicted by Fairley, who testified that the plea bargain was firm as of December 5 or shortly there-

after. Fairley's testimony is supported by persuasive independent evidence. James Howard, the deputy prosecuting attorney at the time in question, testified that the plea negotiations occurred prior to December 5 and the bargain was struck on December 5, 1967. The criminal docket on file with the Circuit Court of Pulaski County reflected that a plea of guilty was entered on December 5, 1967. This Court is firmly convinced that the plea agreement was reached on December 5, 1967. The formal entry of the plea in open court was delayed until December 18, 1967, in order to convene a jury panel for the purpose of assessing the punishment as then required under Arkansas law. The inescapable inference is that one week at most had elapsed from the time counsel were retained until the plea agreement was made on December 5, 1967. Furthermore, it is clear that the bulk of this week was spent in plea negotiations which diminished further the available time for proper investigation of the case.

■ All three attorneys testified that from the outset Petitioner expressed his desire to enter a plea of guilty in exchange for a waiver of the death penalty. The demands of a client, however, do not excuse an attorney from exercising independent professional judgment on behalf of a client.[1] This duty is even more compelling when the client is illiterate as is the Petitioner.[2] Carter testified that "the only homicide we ever told him he would be convicted of was first degree." Fairley also

1. Canon 5 of the ABA Code of Professional Responsibility provides that "A Lawyer Should Exercise Independent Professional Judgment on Behalf of a Client." D.R. 6–101(a)(2) provides that a Lawyer shall not "(h)andle a legal matter without preparation adequate in the circumstances."

Ethical Consideration 7–8 provides:
A lawyer should exert his best efforts to insure that decisions of his client are made only after the client has been informed of relevant considerations. A lawyer ought to initiate this decision-making process if the client does not do so. Advice of a lawyer to his client need not be confined to purely legal considerations. A lawyer should advise his client of the possible effect of each legal alternative. * * * He may emphasize the

possibility of harsh consequences that might result from assertion of legally permissible positions. * * *
While the Code did not become effective until January 1, 1970, it is nothing more than an embodiment of standards of ethical conduct which have guided members of the profession in the past. As an example, ABA Canon 8 provided that "A lawyer should endeavor to obtain full knowledge of his client's cause before advising thereon. . . . ."

2. Ethical Consideration 7–11 provides:
The responsibilities of a lawyer may vary according to the intelligence, experience, mental condition or age of a client * * *. Examples include the representation of an illiterate or an incompetent * * *.

testified that there was no discussion of the possibility of a conviction for murder in the second degree or manslaughter. Henson contradicted his co-counsel by testifying that "we went through the degrees of homicide with him."

■ The failure to fully explore the alternatives with the Petitioner must be considered in light of the circumstances which counsel knew or should have known. Petitioner was not being sought by the police prior to September 2, 1967. There has never been any suggestion that a warrant for the arrest of the Petitioner was outstanding prior to the shooting on that date. There has never been evidence submitted to suggest that a crime had been committed in the presence of Officer Worthy to establish probable cause for the arrest of the Petitioner. There is evidence to suggest that at the time of the shooting Petitioner was under the influence of alcohol. The Court has found no evidence that Petitioner had fired his weapon more than once. Petitioner indicated in his statement that he had "shot as I whirled." The statement did not give any information as to whether Officer Worthy had drawn or fired his weapon although Officer Worthy's weapon contained four expended rounds. Witnesses who heard but did not see the shooting testified that more than one shot had been fired which would tend to indicate that Officer Worthy had in fact drawn and fired his weapon. Arguably Officer Worthy attempted to arrest the Petitioner without probable cause and fired at the Petitioner to effectuate an illegal arrest. While these circumstances if true may not have precluded a jury verdict of murder in the first degree, at the very least counsel had a duty to explore these possibilities. Furthermore, if counsel had fully investigated these matters, they would have been in a position to insure that Petitioner's decision to plead guilty was made "only after the client has been informed of relevant considerations." The record, however, compels the conclusion that the possibility of a conviction for less than murder in the first degree was never discussed with the Petitioner. The Court finds that the failure to keep their client fully advised, the short period of time between their retention on the case and the agreement to plead their client guilty, and the related failure to properly investigate combined to breach their duty owed to the Petitioner.

■ A breach of duty must give rise to actual prejudice. Petitioner has not satisfied his burden of showing prejudice. While counsel failed to fully advise their client, counsels' failure must be examined with the circumstances as they existed in 1967 in mind. The evidence against the Petitioner was overwhelming. It is not necessary to specify the evidence in detail, but the possibility of a conviction for murder in the first degree was apparent. The victim was a police officer killed while in the performance of his duties. The imposition of the death penalty upon conviction was a very real possibility. Counsel could reasonably believe that a plea of guilty with waiver of the death penalty was preferable to risking the death penalty at trial. *Howard v. Henderson*, 519 F.2d 1176, 1178 (5th Cir. 1975), cert. denied, 423 U.S. 1036, 96 S.Ct. 573, 46 L.Ed.2d 412 (1975); *Redus v. Swenson*, 468 F.2d 606, 607 (8th Cir. 1972), cert. denied, 411 U.S. 933, 93 S.Ct. 1906, 36 L.Ed.2d 393 (1973). Petitioner has never denied shooting the victim nor has he presented any reason or evidence to suggest that he did not intend to shoot the Officer. More importantly, there is no evidence to suggest that he ever advised his attorneys of circumstances which would support a finding of less than murder in the first degree. Petitioner never produced evidence that he presented facts to his attorneys which would support a claim that he acted in self-defense. The record is silent as to whether the Petitioner ever advised his attorneys that Officer Worthy had fired or drawn his weapon. Petitioner has not presented this Court with any reason to believe that a more thorough investigation would have uncovered evidence which would have precluded a jury verdict of murder in the first degree. The prior criminal record of the Petitioner certainly diluted any effectiveness his taking the stand

might have had to support a claim of self-defense. The statement the Petitioner gave to the police disclosed no facts which would have precluded a jury verdict of murder in the first degree. While counsel did not move for a judicial determination of the admissibility of the statement, counsel may well have thought that it might jeopardize plea negotiations.

> Often the interests of the accused are not advanced by challenges that would only delay the inevitable date of prosecution, see *Brady v. United States*, supra, 397 U.S. [742], at 751–752 [90 S.Ct. 1463 at 1470–1471], 25 L.Ed.2d 747, or by contesting all guilt, see *Santobello v. New York*, 404 U.S. 257 [92 S.Ct. 495, 30 L.Ed.2d 427] (1971). A prospect of plea bargaining, the expectation or hope of a lesser sentence, or the convincing nature of the evidence against the accused are considerations that might well suggest the advisability of a guilty plea * * *.

*Tollett v. Henderson*, 411 U.S. 258, 268, 93 S.Ct. 1602, 1608, 36 L.Ed.2d 235 (1973). Counsel testified that they did not feel that they could have prevented the admission of the statement in evidence. Even if they were mistaken in their judgment on this point, it is of no avail to the Petitioner.

> In our view a defendant's plea of guilty based on reasonably competent advice is an intelligent plea not open to attack on the ground that counsel may have misjudged the admissibility of the defendant's confession. Whether a plea of guilty is unintelligent and therefore vulnerable when motivated by a confession erroneously thought admissible in evidence depends as an initial matter, not on whether a court would retrospectively consider counsel's advice to be right or wrong, but on whether that advice was within the range of competence demanded of attorneys in criminal cases.

*McMann v. Richardson*, 397 U.S. 759, 770–771, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). Considering all factors, the Court finds that Petitioner has failed to show prejudice resulting in a denial of due process.

## INVOLUNTARY CONFESSION

■ The Court, as indicated above, must initially focus on the competency of counsel in assessing a claim that a plea of guilty was motivated by a prior involuntary confession. *McMann v. Richardson*, 397 U.S. 759, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970); *Smith v. Wolff*, 506 F.2d 556, 561 (8th Cir. 1974). The discussion above is dispositive of the issue. While counsel failed in certain respects to fully discharge their duty to the Petitioner, this Court is unwilling to say that the advice of counsel was not within the range of competency demanded of attorneys in criminal cases. The evidence against the Petitioner independent of the confession was strong.

> For present purposes, we put aside * * those cases where the defendant, although he would have gone to trial had he thought the State could not prove its case, *is motivated by evidence against him independent of the confession.* In these cases * * * the confession, even if coerced, is not a sufficient factor in the plea to justify relief.

*McMann*, supra, 397 U.S. at 767, 90 S.Ct. at 1446. (Emphasis added). Petitioner has failed to prove serious derelictions on the part of counsel sufficient to show that his plea was not a knowing and intelligent act. *McMann*, supra, at 774, 90 S.Ct. 1441.

## CONSEQUENCES OF PLEA

■ The final point raised by Petitioner is that he was not advised of the consequences of his plea of guilty. The standard is whether under the totality of the circumstances the plea was entered knowingly and voluntarily. *Coney v. Wyrick*, 532 F.2d 94 (8th Cir. 1976); *Winford v. Swenson*, 517 F.2d 1114, 1117 (8th Cir. 1975). A transcript of the December 18th hearing discloses the following colloquy:

> MR. CARTER: Yes, sir. We would like to enter a plea of guilty.
>
> THE COURT: Mr. McDonald, is that what you want to do?
>
> THE DEFENDANT: Yes, sir.

THE COURT: All right. And you understand fully the consequences of this plea?

THE DEFENDANT: Yes, sir.

MR. CARTER: Do you desire to withdraw your plea of not guilty previously entered and enter a plea of guilty at this time?

THE DEFENDANT: I want to plead guilty. I am guilty. I want to plead guilty.

THE COURT: And you fully understand what you are doing by entering a plea of guilty?

THE DEFENDANT: Yes, sir. I fully understand what it is.

THE COURT: You are doing this of your own free will and upon the advice of counsel?

THE DEFENDANT: Yes, sir.

THE COURT: And this is what you want to do?

THE DEFENDANT: Yes, sir.

THE COURT: All right. I will show your plea of not guilty withdrawn. You gentlemen may be seated. All right. A plea of guilty is entered. Mr. Adkisson, I understand the State waives the death penalty. Is that right?

The Court finds that the plea of guilty was entered knowingly and voluntarily and that Petitioner realized and understood the consequences of such a plea.

Finally, the Court notes that Petitioner's claim that counsel entered into plea negotiations without his knowledge or consent is not supported by the record and totally without merit.

The Petition for writ of habeas corpus is denied. Counsel for Respondent will submit an appropriate order within ten days following the filing of this Memorandum Decision.